UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MICHAEL P. JOHNSON,**

        **Petitioner,**

        **v.**

**WARDEN, ROSS CORRECTIONAL
INSTITUTION,**

        **Respondent.**

**CASE NO. 2:17-CV-121**
**JUDGE MICHAEL H. WATSON**
**Magistrate Judge Jolson**

## OPINION AND ORDER

On January 11, 2018, the Magistrate Judge issued a Report and

Recommendation ("R&R") and Order recommending that the petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that this action be

dismissed, and ordering the unsealing of previously sealed documents pending

supplemental briefing. ECF No. 26. Respondent filed a Motion in response to

the Magistrate Judge's Order, which proposed alternative courses of actions to

unsealing the documents in question. Mot., ECF No. 31. Petitioner filed an

Objection to the Magistrate Judge's R&R and Order. Obj., ECF No. 32.

Pursuant to 28 U.S.C. § 636(b), this Court has conducted a de novo review

of the R&R and Order. For the reasons that follow, Petitioner's Objection, ECF

No. 32, is **OVERRULED**, and the R&R and Order, ECF No. 26 is **ADOPTED** and

**AFFIRMED**. Petitioner's request for oral argument is **DENIED**. Respondent's

Motion, ECF No. 31, is also **DENIED**. This action is hereby **DISMISSED**.

Finally, the Court **DENIES** Petitioner's request for a certificate of appealability.

In this action, Petitioner challenges his October 2013 convictions after a jury trial in the Franklin County Court of Common Pleas on one count of engaging in a pattern of corrupt activity in violation of O.R.C. § 2923.32 and twenty-five counts of aggravated funding of drug trafficking in violation of O.R.C. § 2925.05. Petitioner asserts that he was denied the right to counsel of choice (claim one); that the evidence is constitutionally insufficient to sustain his convictions (claim two); that he was denied a fair trial because the trial court improperly restricted cross-examination and issued erroneous evidentiary rulings and defective jury instructions (claim three); that he was denied the effective assistance of counsel (claim four); and that the trial court unconstitutionally enhanced his sentence as punishment for his decision to exercise his right to a jury trial (claim five). In her R&R, the Magistrate Judge recommended dismissal of Petitioner's claims as procedurally defaulted or without merit. The Court now conducts a de novo review of Petitioner's objections to the R&R.

## I.    RESPONDENT'S MOTION

The Court deals initially with Respondent's Motion in response to the Magistrate Judge's Order to unseal certain documents in the record. Mot., ECF No. 31. The Objection deals only with the R&R's ruling regarding the unsealing of three specific documents the Court initially allowed to be filed under seal: the Affidavit of Anthony Laird, ECF No. 18, the Affidavit of Javier Armengau, ECF

No. 19, and the Motion for Evidentiary Hearing, ECF No. 20 (together, the "Sealed Documents").

By way of background, on September 6, 2017, the Court granted Petitioner's unopposed motion to expand the record to include the Sealed Documents and other documents that supported Petitioner's claim for denial of the right to counsel of his choosing. Order 1, ECF No. 17. The Magistrate Judge initially allowed Petitioner to file the Sealed Documents under seal based on Petitioner's representation that they were sealed in state court proceedings; however, the Magistrate Judge ordered the parties to submit additional briefing on the issue of keeping the Sealed Documents under seal. *Id.* 1–2. In response, Petitioner maintained that he filed the Sealed Documents under seal out of an abundance of caution to protect the identity of the Confidential Informant (the "CI"), Anthony Laird, referenced therein. Petitioner's Resp. to Court Order, ECF No. 21. Respondent stated it opposed lifting the seal, emphasizing the need to protect the safety and welfare of the CI. Respondent's Resp. to Court Order, ECF No. 24. The Magistrate Judge found Respondent's arguments unpersuasive, because Respondent neither addressed the fact that the CI's identity was disclosed in unsealed documents in the record nor requested the Court to seal those portions of the unsealed documents in which the CI's identity appeared. R&R 58–59, ECF No. 26. Therefore, the Magistrate Judge informed Respondent that it should request within seven days that the Court seal the

relevant unsealed records, and that the failure to do so would result in the Court's unsealing of the Sealed Documents on the eighth day. *Id.*

In the Motion presently before the Court, Respondent does not request sealing of the relevant unsealed documents; instead, it proposes alternative courses of action. *See* Mot., ECF No. 31. Respondent acknowledges that the information contained in the Sealed Documents—including the CI's identity—has been repeatedly disclosed in unsealed documents that are a part of the record before this Court and the state courts. *Id.* at 4. Nevertheless, Respondent avers that the Sealed Documents must remain sealed so as to protect the CI's identity, and out of concerns of comity and federalism. *Id.* at 4. Respondent notes that Petitioner initially received the Sealed Documents from the state trial court with an order from the trial judge that Petitioner "not disclose the documents to others and [to] destroy [the] same after [counsel's] representation of [Petitioner] is concluded". *Id.* at 4 (quoting ECF No. 24, Ex. 1, PAGEID # 1842). Respondent therefore proposes that Petitioner be required to request relief from the state trial judge's protective order before this Court unseals the Sealed Documents. *Id.* at 5. Alternatively, Petitioner proposes that the relevant unsealed documents containing information identifying the CI be withdrawn and substituted with redacted copies. *Id.* The Court rejects both of these proposed courses of action.

First, despite Respondent's suggestion to the contrary, the trial judge's protective order over the Sealed Documents does not automatically require that they be sealed in court filings. A court's issuance of protective orders is

circumscribed by long-established legal tradition which values public access to court proceedings. *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996) (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177 (6th Cir. 1983)). "The fact that information is subject to a protective order is not sufficient justification, in and of itself, to make a filing under seal." *Exeter Fin. Corp. v. Fleet & Rental Liquidators, Inc.*, No. 3-14-1221, 2015 WL 13158326, at *1 (M.D. Tenn. April 30, 2015). "Specifically, the filing party must 'provide an adequate and specific explanation as to why the [filing] should be sealed and apprise the court of the specific harm that will occur if the [filing] is not sealed.'" *Id.* (citing *United States v. Woods*, 533 F. App'x 594 (6th Cir. Apr. 26, 2013); *Elliott Co. v. Liberty Mut. Ins.* Co., No. 08-3419, 2009 WL 750780, *10 (6th Cir. Mar. 23, 2009) (explaining that there is a "strong presumption in favor of public access to judicial proceedings" (citing *EEOC v. National Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (5th Cir. 1996)). Here, Respondent does not identify, and the record does not reflect, any specific harm that would be caused at this juncture by the unsealing of documents, the contents of which have long been disclosed and available to the public and to the defendant and the co-defendants in this case.[1]

Respondent also fails to convince the Court why the CI's identity should remain undisclosed and, therefore, why unsealed documents referencing the CI should be withdrawn and refiled as redacted copies. The government's privilege

---

[1] Petitioner was charged on August 9, 2012, with more than 40 other co-defendants.

to withhold from disclosure the identity of a confidential informant, or the "informant's privilege," applies in civil and criminal proceedings. *See Smith v. City of Detroit*, 212 F.R.D. 507, 508-09 (E.D. Mich. Jan. 7, 2003) (citing *Roviaro v. United States*, 353 U.S. 53, 59 (1957); *Holman v. Cayce*, 873 F.2d 944, 946 (6th Cir. 1989) (other citations omitted)). The purpose of the privilege is to further and protect the public interest in effective law enforcement. *Roviaro*, 353 U.S. at 59. "The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id*. However, the privilege is subject to "close scrutiny." *Smith*, 212 F.R.D. at 510. Where the disclosure of an informant's identity or contents of his communication is relevant and helpful to the defense or essential to a fair determination of a cause, the privilege must give way to disclosure. *Roviaro*, 353 U.S. at 60. Moreover, "[a] court should be mindful of 'the public interest in protecting the flow of information,' but also be 'aware of the need to maintain the integrity of and confidence in the criminal justice system.'" *Smith*, 212 F.R.D. at 510 (citing *Roviaro*, 353 U.S. at 62; *Bergman v. United States*, 565 F. Supp. 1353, 1364 (W.D. Mich. 1983)).

The Supreme Court stated in *Roviaro* that, generally speaking, "once the identity of the informer has been disclosed to those who would have cause to resent the communication," the privilege no longer applies. *Roviaro*, 353 U.S. at 60 (footnote omitted). However, the government does not necessarily waive the

informant's privilege by the mere disclosure of the informant's identity. *United States v. Sierra-Villegas*, 774 F.3d 1093, 1098 (6th Cir. 2014). Even under those circumstances, a Court must "determine the actual nature of the government's interest in maintaining whatever remains of the informant's anonymity in order to balance the factors at stake accurately." *Id.* (citing *United States v. Evans*, 941 F.2d 267, 272 (5th Cir.1991)).

Consideration of these factors weighs in favor of disclosure here. As discussed, the identity of the CI and content of all of the documents currently filed under seal have long been public. For example, the state appellate court refers to the content of the affidavits at issue in its April 2013 decision affirming the trial court's removal of Attorney Armengau based on his potential conflict of interest; and the CI's identity likewise was revealed in Petitioner's September 2014 state appellate brief. ECF No. 6-1, PAGEID ## 253, 397. The CI testified against Petitioner at trial and is identified by name in the trial transcript. ECF No. 6-5, PAGEID ## 1293, 1327. Under these circumstances, there no longer appears to be a sound basis for the Sealed Documents to remain sealed in these proceedings. Further, this Court must consider the content of the Sealed Documents in order to resolve Petitioner's claim that the state courts improperly denied him the right to his counsel of choice.

In view of the foregoing, Respondent's Motion, ECF No. 31, is **DENIED**. The Court **ORDERS** the Clerk to unseal the Affidavit of Anthony Laird (the CI),

ECF No. 18, the Affidavit of Javier Armengau, ECF No. 19, and the Motion for Evidentiary Hearing, ECF No. 20.

The Court now turns to the merits of Petitioner's objections.

## II. PETITIONER'S OBJECTIONS

### A. Claim One: Disqualification of Counsel of Choice

Petitioner brings a Sixth Amendment claim, asserting that the prosecutors manufactured a sham conflict of interest in order to disqualify his privately retained attorney, Javier Armengau, and deprive him of his right to counsel of choice. Mr. Armengau had previously represented the CI who testified at Petitioner's trial, and it was on this basis that prosecutors moved for Mr. Armengau's disqualification as Petitioner's counsel. Petitioner argues that prosecutors manufactured a conflict of interest by making it appear as if the CI had personal knowledge of incriminating facts against the Petitioner when he in fact did not. Petitioner avers that the trial transcript demonstrates that the CI's knowledge of incriminating facts was based on hearsay and that the CI offered little in the State's case against Petitioner. Therefore, Petitioner argues, the state appellate court unreasonably applied *Wheat v. United States*, 486 U.S. 153 (1988) when it upheld the trial court's decision to disqualify Mr. Armengau as Petitioner's trial attorney based on a conflict of interest. Petitioner also avers that the state appellate court based its disqualification decision on an unreasonable determination of the facts in light of the evidence presented. Petitioner maintains that the trial transcript reflects overwhelming evidence that there was no "actual

conflict" of interest, which therefore indicates that the prosecution manufactured the conflict of interest in order to deprive Petitioner of his trial counsel of choice. Obj. 4–5, ECF No. 32. Petitioner thus objects to the Magistrate Judge's recommendation that the Court dismiss his Sixth Amendment claim on the merits.[2] Petitioner's objection is not well taken.

The Sixth Amendment right to counsel grants criminal defendants a "qualified right" to counsel of their choosing. *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1351 (6th Cir. 1993) (citing *Wheat*, 486 U.S. at 164). A "trial court 'must recognize a presumption in favor of [a defendant's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict.'" *Id.* (quoting *Wheat*, 486 U.S. at 164). "The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Id.* (quoting *Wheat*, 486 U.S. at 164). The trial court's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them," *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151–52 (2006) (citing *Wheat*, 486 U.S. at 160), means it has "'substantial latitude' to disqualify counsel when 'a potential for conflict exists which may or may not burgeon into an actual conflict

---

[2] The Magistrate Judge found that "[a]lthough Petitioner at times characterizes his first ground for relief as a prosecutorial misconduct claim, he fails to frame the arguments in this way." R&R 18 n.1, ECF No. 26. Therefore, the Magistrate Judge considered Petitioner's claim as one for violations of the Sixth Amendment and not one for prosecutorial misconduct. *Id.* Petitioner does not object to this conclusion.

as the trial progresses.'" *Kennedy v. Stewart*, 567 F. App'x 433, 435 (6th Cir. 2014) (citing *Wheat*, 486 U.S. at 158). While the Sixth Amendment protects a criminal defendant's right to hire an attorney of his own choosing, "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159 (citing *Morris v. Slappy*, 461 U.S. 1, 13–14 (1983); *Jones v. Barnes*, 463 U.S. 745 (1983))

The determination whether a conflict exists is not always an easy one for the trial court to make. Thus, as the Supreme Court explained in *Wheat*:

> Unfortunately for all concerned, a [trial] court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. . . .

486 U.S. at 162. And as the Magistrate Judge emphasized, "[i]n situations like this—where the court has significant 'leeway' in reaching an outcome, it follows that it is 'less likely' that a state court's application of the rule will be [']unreasonable' under AEDPA." R&R 20, ECF No. 26 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Applying this standard, and after review of the CI's detailed affidavit regarding the expected contents of his testimony, the state trial court found that a serious potential for a conflict of interest warranted disqualification of Mr. Armengau as Petitioner's trial counsel. The CI's affidavit indicated that the CI

"would be testifying against the interests of [Petitioner]" with information that Petitioner was at the top of the hierarchy of the drug organization and was funding all of the trips made by other individuals to illegally obtain prescription pills. Sealed Affidavit, ECF No. 18, PAGEID ## 1820–21. That information, the CI contended, was based on his personal observations of Petitioner and from information obtained from Sparks (one of Petitioner's alleged co-conspirators) and other alleged co-conspirators in Petitioner's case. *See id.*

Petitioner asserts that the state appellate court both unreasonably determined the facts in light of the record and also unreasonably applied clearly established federal law. When a petitioner challenges a state appellate court's application of federal law, the Court "may only grant relief 'where there is no possibility that fairminded jurists could disagree that the state court's decision conflicts" with the decisions of the Supreme Court. *Weaver v. Pfister*, No. 12-C-10100, 2016 WL 930550, at *4 (N.D. Ill. March 11, 2016) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). Under the deferential standard of review imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the question is not whether this Court agrees with the state appellate court's application of *Wheat*, but "whether that court's decision was 'so lacking in justification' that it presents 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id*. (quoting *Harrington*, 562 U.S. at 102–03). And as to the state court's factual findings, under 28 U.S.C. § 2254(e)(1), it is the petitioner's burden to rebut "by clear and

convincing evidence" the presumption that the state appellate court's factual

findings are correct. *See Johnson v. Alabama*, 256 F.3d 1156, 1169 (11th Cir.

2001) (state court's factual findings may be ignored only if the petitioner shows

by clear and convincing evidence that the state court's determination was not

"fairly supported by the record.") (citations omitted).

Under this deferential standard of review of the law and facts as applied to

his case, Petitioner has not established that relief is warranted.

The Court finds unpersuasive Petitioner's contention that the state

appellate court unreasonably applied clearly established federal law when it

upheld the trial court's disqualification of Petitioner's attorney of choice. When

reviewing the state trial court's disqualification ruling, the state appellate court

explained:

As noted, following the hearing on the motion to disqualify, the trial
court granted the state's motion on the basis that attorney
Armengau's representation of the CI, who the state intended to call
as a witness in appellant's trial, created a serious potential for
conflict. In this court's decision affirming the trial court's granting of
the state's motion to disqualify,[3] we found merit with the trial court's
analysis. Specifically, this court noted that, in the event "the CI is
placed on the witness stand and testifies while Armengau represents
Johnson, an un-resolvable conflict exists. Armengau cannot
damage his former client's credibility through use of privileged
information. At the same time, Armengau must diligently represent
Johnson's interests by damaging the CI's credibility." *Johnson* at
¶ 5. This court further noted that "ethical problems have already
arisen in the case" based upon Armengau's admission that "he has

---

[3] Petitioner took and lost an interlocutory appeal of the trial court's disqualification
decision. *State v. Johnson*, 10th Dist. No. 12AP-1067, 2013-Ohio-1682, 2013 WL
1791065 (April 25, 2013). He appealed the decision again after conviction.

already had a meeting with the CI since Armengau was retained by [appellant]." *Id.* ¶ 6.

Here, at the time of the motion, the state cited a valid concern regarding a clear potential for conflict. Courts have recognized the "obvious" potential for conflict where defense counsel "is under a duty to represent zealously the defendant, while on the other hand, he has a duty of confidentiality to his former client, the government witness." *United States v. Falzone*, 766 F. Supp. 1265, 1271 (W.D.N.Y. 1991). In this respect, "numerous cases have recognized" that an attorney's duty of loyalty to a client "requires disqualification when a former client seeks to cooperate with the government and testify against the present client." *United States v. Alvarez*, S.D. Fla. No. 10-20547-CR, 2010 WL 4774649 (Nov. 16, 2010). The potential for conflict arises especially in the context of cross-examination, as defense counsel's "most important function" during a criminal trial is to "vigorously cross-examine the government's witness." *Falzone* at 1271. *See also United States v. Moscony*, 927 F.2d 742, 750 (3d Cir. 1991) ("Conflicts of interest arise whenever an attorney's loyalties are divided . . . and an attorney who cross-examines former clients inherently encounters divided loyalties."). Further, "there need not be a 'substantial relationship' between the subject matter of the prior representation and the issues in the present case before disqualification is warranted." *Falzone* at 1275. Rather, "[a]ll that is required is that the interest of the defendant potentially conflicts with the interest of the former client." *Id.*

*State v. Johnson*, 40 N.E.3d 628, 647–51 (Ohio Ct. App. 2015). This decision is

not an unreasonable application of *Wheat*.

Similarly, as to the factual finding challenged here—that the CI's testimony

was based on personal knowledge and therefore admissible—Petitioner fails to

show that the state appellate court unreasonably determined the facts in light of

the record. On review of the trial court's decision to disqualify Mr. Armengau, the

state appellate court "found unpersuasive [Petitioner's] contention that the CI had

no first-hand information to offer[ or] that the CI's sole source of information was

from Sparks." *State v. Johnson*, 40 N.E.3d 628, 649, 651 (Ohio Ct. App. 2015).

It thus found that the prosecution did not attempt to manufacture a conflict of

interest in order to have Mr. Armengau disqualified by falsely representing that

the CI (Mr. Armengau's former client) would offer admissible testimony against

Petitioner (Mr. Armengau's then-current client). The appellate court explained:

> While appellant challenges the affidavit of the CI in support of the motion to disqualify, there is nothing in the record to suggest the state misrepresented what the CI indicated he knew at that time, or that the state brought the motion as a strategy to deprive appellant of Armengau's representation. As noted, the state represented at the hearing on the motion that it intended to call the CI as a witness, and the CI ultimately did testify. As also discussed, the record does not support appellant's contention that the only information the CI possessed was through conversations with Sparks. Rather, the CI testified not only to information Sparks provided, but also his "personal observation[s]" and conduct. (Tr. 630.) Here, notwithstanding the benefit of hindsight in the form of the CI's trial testimony, appellant has not demonstrated that the state acted improperly in filing the motion to disqualify counsel by attempting to manufacture a conflict of interest.

*Id*. at 651. The argument Petitioner now makes in support of his Sixth

Amendment Claim—that the factual record reveals no actual conflict of interest

created by admissible testimony from the CI against Petitioner—is, ultimately,

irrelevant. What does matter is whether the trial court reasonably concluded that

the CI's admissible testimony created a serious potential for a conflict of interest.

This Court does not find the state court's factual determination that the CI's

testimony created a serious potential for a conflict of interest was unreasonable.

Petitioner thus fails to establish any grounds for relief on his Sixth Amendment counsel-of-choice claim under AEDPA's highly deferential standard of review.

## B. Claim Two: Insufficiency of Evidence

Petitioner objects to the Magistrate Judge's recommendation of dismissal on the merits of his claim that the evidence is constitutionally insufficient to sustain his convictions on twenty-five counts of aggravated funding of drug trafficking, in violation of Ohio Revised Code § 2925.05, and one count of engaging in a pattern of corrupt activity, in violation of Ohio Revised Code § 2923.32(A)(1).

As to his convictions for aggravated funding of drug trafficking, Petitioner again argues that the State failed to establish that he violated each of the elements of that crime, in view of *State v. Scott*, 432 N.E.2d 798 (Ohio 1982) (*superseded by statute as stated in State v. Chandler*, 109 Ohio St.3d 223 (2006)), and *State v. Bowshier*, No. 83001-004, 1983 WL 4471 (Ohio App. Sept. 7, 1983). According to Petitioner, the statute as defined by those cases does not prohibit the conduct alleged here: Petitioner's funding of third parties in order to obtain a supply of drugs for his own drug trafficking business. Obj. 13, ECF No. 32. Petitioner further argues that the Ohio court of appeals' interpretation of O.R.C. § 2925.05 as encompassing the facts of this case does not bind this Court, because the Ohio appellate districts were divided regarding the interpretation of the aggravated funding statute, and due process and the rule of

lenity therefore required the tenth district state appellate court (and require this Court) to resolve any ambiguity in the Petitioner's favor. *Id.* at 14.

Petitioner's arguments are unpersuasive. The sole issue before the Ohio Supreme Court in *Scott*, referred to by Petitioner, was whether the trial court properly entered a guilty verdict against the defendant for drug trafficking, under § 2925.03(A)(1),[4] which is not at issue here. Thus, *Scott* did not address the sufficiency of the evidence or define the elements required to establish a conviction for the funding of drug trafficking under §§ 2925.03(A)(8) or 2925.05, the provisions at issue here.

*Bowshier*, likewise, does not assist Petitioner. Indeed, the state appellate court, in its denial of Petitioner's motion to certify a conflict, rejected Petitioner's argument that its decision conflicted with the holding in *Bowshier*:

> [A]ppellant cited *Bowshier* in his appellate brief in support of the assertion that his convictions for multiple counts of aggravated funding of drug trafficking under R.C. 2925.05 were not supported by sufficient evidence that he funded another's drug trafficking business. Appellant seeks to certify as a conflict the issue of whether R.C. 2925.05, the drug funding statute, applies to the conduct of a defendant who provides money to another person for the purpose of obtaining a supply of controlled substances for the defendant to sell or offer to sell to others. . . .
>
> In *Bowshier*, the defendant and a female companion, Jo Ellen Henry, were arrested while riding in a vehicle; during a search of the defendant's vehicle, the police found a quantity of illegal drugs belonging to Henry. The indictment, which charged defendant with a violation of R.C. 2925.03(A)(8) (the precursor to R.C. 2925.05), alleged that the defendant "*attempted* to obtain drugs at a future

---

[4] O.R.C. § 2925.03(A)(1) provides that "[n]o person shall . . . [s]ell or offer to sell a controlled substance or a controlled substance analog . . . ."

time so that he could re-sell them" (Emphasis added.) *Id.* The trial court granted the defendant's motion to dismiss, finding that the indictment did not state a crime. In *Bowshier*, the appellate court affirmed, agreeing with the trial court that "the language of the indictment does not charge a crime under the statute." *Id.*[5]

In the case before this court, a jury returned verdicts finding appellant guilty of multiple counts of aggravated funding of drug trafficking under R.C. 2925.05. . . . [A]ppellant challenged his convictions for those offenses as not supported by sufficient evidence. As part of his sufficiency challenge, appellant argued that the state failed to prove he funded another person's drug trafficking, asserting the state did not prosecute him on the theory that he was passively financing the drug trafficking business of a third party, but that he was recruiting drug addicts to obtain Oxycodone to market on his own. *Johnson* at ¶ 70. This court, however, agreed with the state's argument that the statute "only requires that the recipient of the money use it to obtain the controlled substance for purposes of future resale." *Id.* at ¶ 71. . . .

---

[5] The Twelfth District Court of Appeals in *Bowshier* stated:

This Court finds that the indictment together with the bill of particulars does not state a violation of R.C. 2925.03 (A)(8) which reads:

(A) No person shall knowingly do any of the following:

(8) provide money or other items of value to another person with the purpose that the recipient of the money or items of value would use them to obtain controlled substances for the purpose of selling or offering to sell such controlled substances in amounts exceeding a bulk amount or for the purpose of violating division (A) (3) of this section.

The Ohio Supreme Court has recognized that a violation of this code section involves the financing of another's trafficking. *State v. Scott* (1982), 69 Ohio St. 2d 439, 432 N.E.2d 798. The indictment and the bill of particulars state that Mr. Bowshier attempted to obtain drugs at a future time so that he could re-sell them. Clearly, this is inconsistent with the meaning and the intent of the code section in question. We agree with the trial court that the language of the indictment does not charge a crime under the statute.

*Id.* at *1.

Because we find our case to be factually different from *Bowshier*, we conclude that there is no conflict . . . .

Memorandum Decision, ECF No. 6-1, PAGEID ## 622–23.[6]

Despite Petitioner's argument to the contrary, AEDPA binds this Court to the state court's interpretation of its own statute. *Bradshaw v. Richey*, 546 U.S. 74 (2005). Additionally, Petitioner cites to no case law that supports his specific argument that the rule of lenity binds one state appellate court to another state appellate court's ostensibly more lenient interpretation of a state statute in another case. In short, this Court is not persuaded by Petitioner's argument that the holdings in *Scott* or *Bowshier*, or that due process, preclude the state appellate court's determination that § 2925.05 allowed the State to prosecute Petitioner pursuant to that section based on the theory alleged in this case.

Petitioner also asserts several other arguments regarding the sufficiency of the evidence that he previously presented to the Magistrate Judge. Specifically, Petitioner argues that the prosecution failed to correlate cooperating witnesses' drug sales to the particular funding counts of the Indictment; failed to properly establish the identity of the drugs under *State v. McKee*, 744 N.E.2d 737 (Ohio 2001); and failed to correlate a particular drug trip with an intent to sell a bulk

---

[6] Other Ohio appellate courts have likewise concluded that the funding of drug trafficking does not require proof that the recipient of the money both obtained the controlled substance and sold or offered to sell it. *See, e.g.*, *State v. Turner*, No. E-95-056, 1997 WL 543073 (Ohio App. 6th Dist. Aug. 29, 1997); *State v. Caudill*, No. 05-97-35, 1998 WL 833729 (Ohio App. 3rd Dist. Dec. 2, 1998); *State v. Jenkins*, No. 97-CA-46, 1998 WL 516296, at \*2-3 (Ohio App. 5th Dist. Jan. 8, 1998).

amount of oxycodone from that particular trip and, as a consequence, likewise failed to establish the crime of engaging in a pattern of corrupt activity. In raising these arguments again, Petitioner fails to articulate any specific objection to the Magistrate Judge's rejection of the same. For the reasons already detailed in the Magistrate Judge's R&R, the Court finds these arguments unavailing. Applying the doubly deferential standard of review required under the AEDPA, *see Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), Petitioner has not established that his claim for insufficiency of evidence warrants relief.

## C. Claim Three: Confrontation Clause

Petitioner objects to the Magistrate Judge's recommendation of dismissal of his confrontation clause claim as procedurally defaulted and as failing to present a cognizable claim for federal habeas review.

Petitioner submits that he properly presented a claim under the Confrontation Clause on direct appeal. He avers that he asserted this claim under his "Assignment of Error No. 3," in which he alleged that "[t]he cumulative effect of the trial court's erroneous evidentiary rulings, restriction on cross-examination, and a defective specific intent instruction deprived Defendant-Appellant of his Sixth and Fourteenth Amendment right to a fundamentally fair trial and reliable jury verdict." Brief of Defendant-Appellant, ECF No. 6-1, PAGEID # 425. In subsection (b) of that claim, Petitioner claimed that the trial court had imposed an "unreasonable restriction on cross examination." *Id.* at

PAGEID # 427. Referring to *Davis v. Alaska*, 415 U.S. 308, 315 (1974),[7]

Petitioner argued that the trial court had improperly restricted his cross-

examination of Detective Allen, in violation of the Confrontation Clause of the

Sixth Amendment. *Id.* Petitioner stated:

> Defense counsel attempted to cross-examine Detective Allen about the items of contraband, criminal tools, ledgers, sought under the express terms of the search warrant for Johnson's residence and the failure of the investigators to find any of these items. (Tr. I: 88-90)[.] The trial judge . . . told defense counsel he could inquire about items not found during the search as long as he did not "bootstrap" it to the warrant. (*Id.*)
>
> The court failed to take into account that an overriding theme of the State's case was the notion that the detectives were able to independently corroborate information provided by the co-defendants. . . [who] conjured up an image of a wealthy drug kingpin who used his home as a base of operations.
>
> This opened the door to defense counsel's proposed line of cross-examination. He intended to establish that the search failed miserably insofar as not corroborating the proffer information used to obtain the search warrant. The court's refusal to allow defense counsel to draw a connection between the results of the search and the warrant undermined this effort and deprived Johnson of his Sixth Amendment right of confrontation.

PAGEID ## 427–28. Additionally, in his Reply Brief before the state appellate

court, Petitioner argued that this claim should not be reviewed for "an abuse of

discretion," because it implicated his Sixth Amendment and right of confrontation,

---

[7] "In *Davis v. Alaska*. . . the Supreme Court held that the state trial court violated the defendant's Confrontation clause rights by barring him from impeaching a prosecution witness with the witness's prior criminal record." *Vasquez v. Jones*, 496 F.3d 564, 570 (6th Cir. 2007).

and the restriction on cross-examination rose to the level of constitutional error.

*Id.* at PAGEID ## 550–51.

The state appellate court rejected the claim, finding "no error" and

referencing *Delaware v. Van Arsdall*, 475 U.S. 673 (1986),[8] a Confrontation

Clause case, stating that the trial judge had not abused its discretion in imposing

reasonable limits on Petitioner's cross examination:

> Appellant . . . asserts the trial court unreasonably restricted defense counsel's cross-examination of Detective Allen regarding items sought under the search warrant issued for appellant's residence. Appellant argues that defense counsel attempted to cross-examine the detective regarding items of contraband, criminal tools, and ledgers sought under the express terms of the search warrant for appellant's residence. According to appellant, defense counsel intended to establish that the search was wholly unsuccessful insofar as it failed to corroborate proffer information used to obtain the search warrant.
>
> \*\*\*
>
> [W]hile the record indicates the trial court sustained the state's objection with respect to defense counsel's "reading from the warrant," the court noted it would allow defense counsel to inquire of the detective whether he found "any ledgers, did you find any of that." (Tr. 89.) Thus, the court indicated it would permit counsel to "[a]sk those questions. Just not bootstrapping to the warrant." (Tr. 90.) We find no error with the court's ruling. As noted by the state, detailed information about the contents of the proffers by the various co-defendants was not part of the record, and the witness at issue, Detective Allen, was not present during the search of appellant's residence. Upon review, we find the trial court did not abuse its discretion in its limitation of the scope of cross-examination of the detective.

---

[8] In *Van Arsdall*, the Supreme Court held that the trial court improperly restricted defense counsel's cross-examination designed to show bias, thereby violating the Confrontation Clause, but also held that the error was subject to harmless error analysis.

*Johnson*, 40 N.E.3d at 652–53.

Assuming, *arguendo*, that Petitioner's Confrontation Clause claim may properly be addressed by this Court, the record nonetheless plainly reflects that the claim does not provide him relief.[9]

The Sixth Amendment's Confrontation Clause guarantees criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of the trial. *Illinois v. Allen*, 397 U.S. 337, 388 (1970). A criminal defendant's right to cross-examine witnesses against him, however, is not unlimited. "Trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *VanArsdall*, 475 U.S. at 679. The Confrontation Clause thus guarantees the *opportunity* for effective cross-examination, not cross-examination in whatever way or to whatever extent the defendant may desire. *Id*. (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)); *see also Norris v. Schotten*, 146 F.3d 314, 330 (6th Cir. 1998) (no

_____

[9] Petitioner asserts that the state appellate court's ruling is not entitled to deference in these proceedings, due to its alleged use of an incorrect standard of review. Traverse, ECF No. 16, PAGEID # 1803. However, the deferential standard of review set forth under AEDPA, *see* 28 U.S.C. § 2254(d), applies to *any* claim that was adjudicated on the merits by the state courts. *See Pouncy v. Palmer*, 846 F.3d 144, 159 (6th Cir. 2017). That standard also applies when a state court's order is unaccompanied by an opinion explaining the reasons for the denial of relief. *See Werth v. Bell*, 692 F.3d 486, 492 (6th Cir. 2012) (citing *Harrington v. Richter*, 562 U.S. 86 (2011)). Further, and even under a *de novo* standard of review, this Court concludes that Petitioner's claim nonetheless fails.

Confrontation Clause violation where relevance of questions prohibited on cross-examination is unclear and the risk of prejudice real) (citations omitted). Where a trial court limits the extent of a criminal defendant's cross-examination, but does not bar it completely, the trial court is afforded wider latitude. *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2007) (quoting *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989)). Under such circumstances, the test is "whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory." *Id*. (citing *Dorsey*, 872 F.2d 163).

Further, a Confrontation Clause violation, where established, is subject to a harmless error analysis. "[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)]." *Fry v. Pliler*, 551 U.S. 112, 122–23 (2007). *See also Vasquez v. Jones*, 496 F.3d 564, 575 (6th Cir. 2007) ("To resolve the harmless error issue, [a court] must ask whether the constitutional violation 'had substantial and injurious effect or influence in determining the jury's verdict.'" (quoting *Brecht*, 507 U.S. at 623)). This inquiry involves consideration of several factors, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall

strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 673, 684; *see also Earhart v. Konteh*, 589 F.3d 337, 345–46 (6th Cir. 2009) (applying the *Van Arsdall* factors under the *Brecht* standard). "If the constitutional error had no material effect, the verdict must stand. However, if the court has 'grave doubts' whether the error had a substantial or injurious effect or influence in determining the jury's verdict," the court must grant the petitioner's writ. *Jensen v. Romanowski*, 590 F.3d 373, 379 (6th Cir. 2009) (citing *O'Neal v. McAninch*, 513 U.S. 432, 435–36 (1995); *Stallings v. Bobby*, 464 F.3d 576, 582 (2006)).

Here, the record does not support Petitioner's claim that the trial court refused to permit him to cross-examine Detective Allen about property seized by the task force during the search of Petitioner's house. Instead, the record reflects that the prosecutor objected to the reading of the search warrant by defense counsel during cross-examination of Allen. Transcript, ECF No. 6-3, PAGEID # 805. The trial court sustained the objection and advised defense counsel that he could question the witness regarding items seized but could not read the warrant:

> COURT: The objection is as to the reading from the warrant, I will sustain that. I'll allow you to ask him did you find any ledgers, did you find any of that. But you're not going to bootstrap it.
>
> [DEFENSE COUNSEL]: . . . We have to address what was found or did not find [sic]. . . .
>
> COURT: I said you would. Absolutely you can do it with this witness, if you want, just clarify.

***

> Ask those questions. Just not bootstrapping to the warrant.

*Id.* at PAGEID ## 806–07. Detective Allen then testified that he did not participate in the execution of the search warrant, and counsel asked no further questions. *Id.* at PAGEID # 808. Detective Brian Key, who assisted in executing the search warrant, subsequently testified at length regarding all of the items that were seized from the Petitioner's home. *Id.* at PAGEID ## 832–43; 846–66. The evidence and property inventory form itemizing all of the items seized from the home was admitted into evidence. *Id.* at PAGEID ## 842–43; 845. Defense counsel cross-examined Key regarding the content of the items seized. *Id.* at PAGEID ## 867–75. Thus, nothing prevented defense counsel from making an argument that the evidence seized failed to corroborate proffer information.

The record does not support Petitioner's argument that the trial court's rulings violated the Confrontation Clause. In any event, based on the overwhelming evidence of Petitioner's guilt presented at trial, any purported error would have been harmless. Petitioner is therefore not entitled to relief on this claim.

## D. Claim Four: Ineffective Assistance of Counsel

Petitioner asserts that he was denied the effective assistance of counsel because his attorney: (1) failed to object to improper questioning and elicited damaging testimony during cross-examination of prosecution witnesses;

(2) failed to move for a mistrial after the CI's testimony purportedly proved that prosecutors had moved to disqualify defense counsel in bad faith; and (3) failed to object to defective jury instructions. Petitioner argues that the state appellate court conducted a superficial review of the numerous deficiencies by defense counsel, and unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner also objects to the Magistrate Judge's recommendation of dismissal of this claim on the merits and to the characterization of his arguments related to the prejudice prong of the *Strickland* test as "conclusory" or "devoid of specificity." On objection, Petitioner again refers to all of the arguments he presented in his Traverse. He maintains that he suffered prejudice as a result of counsel's alleged repeated deficiencies in performance and argues that the state appellate court failed to adequately address the issue.

Under *Strickland*'s two-pronged analysis for ineffective assistance of counsel claims, Petitioner must demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Strickland*, 466 U.S. at 556. To show deficient performance, Petitioner must demonstrate "that counsel's representation fell below an objective standard of reasonableness." *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011). Under the prejudice prong, Petitioner must show with "a reasonable probability that, but for counsel's unprofessional errors, the result to the proceeding would have been different." *Buck v. Davis*, 137 S. Ct. 759, 765 (2017). Additionally, because this is on habeas corpus review and the state court correctly identified and applied the *Strickland*

standard, AEDPA requires this Court to apply a "doubly deferential" standard of review. *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 848 (6th Cir. 2017) (citing *Van Tran*, 764 F.3d at 624). Under this standard, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 89 (2011)).

After a review of the record, this Court is satisfied that the state appellate court reasonably determined that trial counsel's performance was not deficient and that, even if it was, Petitioner suffered no prejudice as a result.

Petitioner first argues that his trial counsel's errors in his method of questioning witnesses and his failure to object to the State's method of questioning, considered on a cumulative basis, fell below an objective standard of reasonableness and therefore constituted deficient performance. The state appellate court rejected this argument, because, as the Magistrate Judge explained:

> The [state appellate] court noted that sometimes, rather than object, counsel addressed the issue on cross-examination or sometimes, when counsel did object to leading questions, the prosecutors simply rephrased the questions. With respect to the claim that counsel failed to object to hearsay, the court explained that the testimony at issue fell within an exception. As for the issue of the scope of cross-examination, the state appellate court determined that it constituted trial strategy.

R&R 48, ECF No. 26; *see also id.* at 44–46 (quoting the state appellate court's lengthy analysis of Petitioner's argument and its conclusions as to the same).

The court thus determined that trial counsel's decisions with respect to

examination of witnesses did not constitute deficient performance. The Magistrate Judge upheld that decision, concluding that whether the counsel's decisions were considered in isolation or cumulatively they were not objectively unreasonable. The Undersigned agrees. The state appellate court reasonably determined that trial counsel's performance was objectively reasonable and that, even if it was not, no prejudice resulted.

Second, because the Court found that the state court did not unreasonably disqualify Mr. Argmengau as Petitioner's counsel based on a potential conflict of interest, it rejects Petitioner's claim for ineffective assistance of counsel based on trial counsel's failure to move for mistrial because there was no actual conflict of interest.

Finally, Petitioner avers that his counsel's performance was deficient because he failed to object to the trial court's erroneous jury instructions. Petitioner asserts that the jury instructions violated state law. While he acknowledges that "[f]ederal habeas corpus relief does not lie for errors of state law," Obj. 22, ECF No. 32 (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)), Petitioner contends that he may raise a Sixth Amendment ineffective assistance of counsel claim based on his attorney's failure to object to an instruction that is erroneous under state law. *Id.* (citing *Gray v. Lynn*, 6 F.3d 265, 270 (5th Cir. 1993); *Luchenburg v. Smith*, 79 F.3d 388, 392 (4th Cir. 1996)). Petitioner fails to establish, however, that the trial court's jury instruction was erroneous under state law. Petitioner essentially takes issue with the trial court's failure to recite

verbatim Ohio's pattern jury instruction pertaining to Ohio Revised Code
§ 2925.05, arguing that pattern jury instruction "requires the insertion of the bulk
amount requirement after the purpose to sell or offer to sell language." Id.
However, Petitioner does not articulate how the word ordering in one specific
portion of the jury instructions caused the instructions to be erroneous overall
and, thus, how his counsel's failure to object to the jury instructions (assuming
such failure constituted deficient performance) resulted in prejudice. In its review
of this claim, the state appellate court determined that

the instruction, read as a whole, stated the applicable law, and that
appellant had not demonstrated error as a result of the trial court's
failure to provide a verbatim recitation of the standard jury
instructions. Accordingly, appellant cannot demonstrate prejudice as
a result of trial counsel's failure to object to the instruction at issue.

Johnson, 40 N.E.3d at 657. Petitioner's argument that the jury instruction did not
exactly track pattern Ohio jury instructions does not make those jury instructions
erroneous overall. But even if Petitioner had shown that the jury instruction was,
in fact, erroneous, he nevertheless does not demonstrate that that he was
prejudiced as a result of trial counsel's failure to object to the instruction. This
argument, therefore, also fails.

For all of these reasons, the Court finds that under AEDPA's "doubly
deferential" standard of review, Petitioner is not entitled to relief on his ineffective
assistance of counsel claim.

## E. Claim Five: Vindictive Sentence

Petitioner objects to the Magistrate Judge's recommendation of dismissal of claim five on the merits. Petitioner maintains that the trial court's vindictiveness can be gleaned from the sentencing transcript, because the trial judge indicated that an effective life sentence would not be appropriate, but nonetheless imposed an aggregate term of sixty-four years in prison—effectively, a life term. Petitioner argues that the state appellate court unreasonably applied federal law when it rejected this claim. This Court is not persuaded by Petitioner's argument.

Prior to imposing sentence, the trial judge indicated that he believed that the sentence should be commensurate with the crime and, importantly, that it should "not be disproportionate. And what I mean by this is just because you can give an effective life sentence . . . doesn't make it appropriate." Transcript, ECF No. 6-6, PAGEID # 1714. As discussed at length by the state appellate court, the trial court went to address the statutory seriousness and recidivism factors prior to imposing the sentence. The statement referred to by Petitioner does not provide evidence of judicial vindictiveness, and the record does not support this claim.

## III. CONCLUSION

For the foregoing reasons and for the reasons detailed in the Magistrate Judge's Report and Recommendation, Petitioner's Objection, ECF No. 32, is **OVERRULED**. Respondent's Motion, ECF No. 31, is **DENIED**. The R&R and

Order, ECF No. 26, is **ADOPTED** and **AFFIRMED**. Petitioner's request for oral argument is **DENIED**. This action is hereby **DISMISSED**.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court now considers whether to issue a certificate of appealability. "In contrast to an ordinary civil litigant, a state prisoner who seeks a writ of habeas corpus in federal court holds no automatic-right to appeal from an adverse decision by a district court." *Jordan v. Fisher*, — –U.S. ——. ——, 135 S. Ct. 2647, 2650 (2015) (Sotomayor, J., dissenting); 28 U.S.C. § 2253(c)(1) (requiring a habeas petitioner to obtain a certificate of appealability in order to appeal).

When a claim has been denied on the merits, a certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). When a claim has been denied on procedural grounds, a certificate of appealability may issue if the petitioner establishes that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

Upon review of the record, and as outlined in the Court's above analysis, the Court is not persuaded that reasonable jurists would debate its dismissal of Petitioner's claims. Therefore, the Court **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**